



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Case No. _____ 05cv2973 _____

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, ) ) ) Plaintiff, ) ) v. ) ) PAUL M. EUSTACE, AND ) PHILADELPHIA ALTERNATIVE ASSET ) MANAGEMENT COMPANY, LLC ) ) ) Defendants. ) ) | **Complaint for Injunctive and Other Equitable Relief and for Civil Penalties Under the Commodity Exchange Act, as Amended, 7 U.S.C. §§ 1-25** **FILED** JUN 9, 2, 2005 MICHAEL E. KUNZ, Clerk By _____ Dep. Clerk |

The U.S. Commodity Futures Trading Commission ("Commission"), by and through its

attorneys, hereby alleges as follows:

## I.

## SUMMARY

1.      Beginning in or about March 2003 and continuing through the present (the

"relevant period"), Paul M. Eustace ("Eustace") and Philadelphia Alternative Asset Management

Company, LLC ("PAAM") (collectively, "Defendants") have fraudulently solicited and accepted

at least $680,000 from at least one member of the general public to participate in a commodity

trading pool, Philadelphia Alternative Asset Fund, LP (the "LP Pool"). LP Pool claims to be a

hedge fund operated by PAAM and traded by Eustace, and was established to trade, among other

things, commodity futures and options contracts.

2.     The Defendants issued false statements to the LP Pool participant showing that as of January 31, 2005, the Pool was purportedly trading commodity futures and options and that his share of the LP Pool had increased in value to $1,118,973.

3.     The Defendants also attempted to solicit another prospective LP Pool participant by using a one-page chart purporting to show actual trading results from October 2002 through March 2004 reflecting a cumulative percentage return of 25.38%. In fact, Defendants had not achieved those results trading commodity futures and options for the LP Pool.

4.     At the time that these statements were issued, and as Eustace has admitted, the Defendants had not engaged in any commodity futures or options trading in the name of the LP Pool or the LP pool participant.

5.     Since approximately July 2004, the Defendants have operated two other commodity pools, the Philadelphia Alternative Asset Fund, Ltd., an off-shore pool ("Off-Shore Pool"), and the Philadelphia Alternative Asset Feeder Fund LLC. ("Feeder Fund"), which allows US customers to participate in the Off-Shore Pool. The Defendants have accepted over $230 million from pool participants. Those pools traded, among other things, commodity futures and options. According to the Defendants' website, the Off-Shore Pool traded on regulated futures markets.

6.     Beginning in February 2005 and continuing through May 2005, the Off-Shore Pool sustained severe trading losses exceeding $140 million. However, during those same months, the Defendants posted trading results on their website, www.paamcollc.com, reflecting that the Fund was trading profitably for those same months, and issued an account statement to at least one pool participant in the Feeder Fund showing that his account had increased in value in April 2005.

Complaint                                    2

7.     The Defendants have engaged, are engaging, or are about to engage in acts and practices that violate the antifraud provisions of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. § 1 *et seq.*, and the Regulations of the Commodity Futures Trading Commission ("CFTC"), 17 C.F.R. § 1.1 *et seq.*, including Sections 4b(a)(2)(i) - (iii); 4c(b); and 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) - (iii); 6c(b); and 6o(1) (2002), and Sections 4.41(a) and 33.10 of the Commission's Regulations (the "Regulations"), 17 C.F.R. §§ 4.41(a) and 33.10. (2004).

8.     Eustace's actions and failures alleged in this Complaint were done within the scope of his employment with PAAM, and therefore PAAM is liable for his violations pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2 (2002).

9.     In addition to his direct liability, Eustace directly or indirectly controls PAAM and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting PAAM's violations alleged in this Complaint, and is therefore liable for PAAM's violations of the Act and Regulations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2002).

10.     Accordingly, the Commission brings his action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002), to enjoin the Defendants' unlawful acts and practices and to compel their compliance with the Act and CFTC Regulations. In addition, the Commission seeks disgorgement of the Defendants' ill-gotten gains, restitution to pool participants, civil monetary penalties, and such other relief as this Court may deem necessary or appropriate.

11.     Unless restrained and enjoined by this Court, the Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

Complaint                                    3

## II.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7

U.S.C. § 13a-1 (2002), which authorizes the Commission to seek injunctive relief against any

person whenever it shall appear to the Commission that such person has engaged, is engaging, or

is about to engage in any act or practice constituting a violation of any provision of the Act or

any rule, regulation or order thereunder.

13.    Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C.

§ 13a-1(e) (2002) in that the Defendants are found in, inhabit, or transact business in this

District, and the acts and practices in violation of the Act have occurred, are occurring, or are

about to occur within this District.

## III.

## THE PARTIES

14.    Plaintiff Commission is an independent federal regulatory agency charged with

the responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.*

(2002), and the Regulations promulgated under it, 17 C.F.R. §§ 1 *et seq.* (2004).

15.    Defendant Eustace is an individual who resides in Ontario, Canada. Eustace is

the President of PAAM. He has been registered with the CFTC as the sole Associated Person of

PAAM since October 8, 2003, and is listed as its sole principal.

16.    Defendant PAAM is a Delaware Limited Liability Company with an office

located in King of Prussia, PA. PAAM has been registered with the CFTC as a Commodity Pool

Operator ("CPO") since October 8, 2003 and was a registered Commodity Trading Advisor

("CTA") from October 8, 2003 until January 13, 2005, when it withdrew its CTA registration.

23.     This fictitious monthly account statement was issued on the LP Pool's letterhead and signed by Eustace.

24.     During the time that the LP pool participant was receiving these fictitious account statements, as Eustace has admitted, the Defendants never managed accounts that traded futures or options in the name of the LP Pool or the LP pool participant.

**B.     Defendants Presented Fictitious Trading Records To a Prospective Pool Participant**

25.     On or about March 8, 2004, Eustace sent promotional materials for the LP Pool to at least one prospective participant via e-mail, which included a PowerPoint presentation dated December 2003, describing the LP Pool; a private placement memorandum for the LP Pool dated December 2003; and a one-page document that purported to show actual trading results for the LP Pool for the period October 2002 through March 2004 (the "LP Pool trading chart").

26.     The PowerPoint presentation states that PAAM is the "General Manager" of the Pool, and that Eustace is the President of PAAM.

27.     The private placement memorandum refers to the LP Pool as "the Fund" and states that it is a "Delaware limited partnership organized for the purpose of achieving capital appreciation through investments in a wide range of capital market instruments," including commodity futures and options.

28.     The private placement memorandum also states that "The Fund and the General Partner are recently formed entities and have a limited past performance record."

29.     The trading chart states that "the Fund commenced trading under the direction of the Manager in October 2002.  The Fund had no transaction history prior to this."

30.     The trading chart further states "Past performance may not be indicative of future performance."

Complaint                                        6

31.     Each of these statements indicates that actual trading had taken place in the LP Pool by the date of the solicitation documents.  Nevertheless, at the time these statements were issued, by Eustace's admission, the Defendants had not actually conducted any trading for the LP Pool.

32.     On or about May 26, 2005, Eustace informed the National Futures Association ("NFA"), a self regulatory organization that oversees the commodity futures and options markets, that the trading chart "numbers were meant to demonstrate hypothetical performance of my trading strategies with a gradual escalation of assets" and provided purported back-up documentation reflecting futures trading results.  Eustace further explained that "[t]he entity referenced, Philadelphia Alternative Asset Fund, LP, in this document never had a trading account."  Philadelphia Alternative Asset Fund, LP is the LP Pool.

**C.    Defendant Eustace Did Not Disclose the Existence and Operation of the LP Pool to NFA**

33.     In or around September 20, 2004, NFA conducted an audit of PAAM.

34.     Eustace was the person at PAAM who responded to all of NFA's questions concerning PAAM.

35.     During the on-site audit of PAAM, NFA did not find any documents referring to the LP Pool, and Eustace did not disclose the existence of the LP Pool.

36.     As part of its audit, NFA conducted sworn testimony of Eustace and asked him to name all of the accounts over which he exercised any control during 2004.  Eustace identified four trading accounts that he managed in 2004.  Eustace did not identify or otherwise disclose that he managed the LP Pool.

37.     On or about May 20, 2005, NFA asked Eustace about the LP Pool and Eustace said it contained only personal money and might have been traded at F.C. Stone.  During the

relevant time period, FC Stone never maintained an account in the name of the LP Pool or Eustace.

38.    On or about May 24, 2005, Eustace changed his story and claimed that the LP Pool was never traded.

39.    On or about June 8, 2005, Eustace again revised his story, claiming that the LP Pool did not trade, and had never traded, futures or options, but instead had engaged in "swap transactions."

### D.    Defendants Issued False Statements to Participants and Posted False Trading Results On Its Website For An Off-Shore Commodity Pool

40.    Beginning around July 2004 and continuing through the present, PAAM also operated the Off-Shore Pool which, according to PAAM, trades exclusively on regulated futures markets. PAAM also operated the Feeder Fund, which allows US customers to participate in the Off-Shore Pool. Defendants have solicited and accepted over $230 million from pool participants to trade in the Off-Shore Pool and Feeder Fund.

41.    During the relevant period, the Feeder Fund did not maintain any accounts in its own name.

42.    Those pools traded commodity futures and options on U.S. registered entities, or, in other words, on U.S. futures exchanges.

43.    Beginning in February 2005 and continuing through May 2005, the Off-Shore Pool sustained severe trading losses which totaled more than $140 million. By the end of May 2005, the accounts had lost $85 million, representing approximately 50 percent of the remaining value of the pool.

44.     In or about May 2005, the Defendants issued an account statement to one Feeder

Fund pool participant showing that his monthly net return for April 2005 was 1.69%.

45.     In or about May 2005, the Defendants posted on their website,

www.paamcollc.com, the following 2005 net returns for the Off-Shore Pool:  1.25% in February;

1.56% in March; 1.69% in April, with a year-to-date net return of 5.5%.

46.     In fact, the Off-Shore Pool's commodity futures and options trading resulted in

the following losses during those months:  February - $18 million (-10.36%); March - $7

million(-4.41%); April - $33 million (-17.94%); and May - $85 million (-50.16%).

47.     The April 2005 monthly account statement issued to the Feeder Fund pool

participant was issued on Feeder Fund letterhead and signed by Paul Eustace.

**E.     Defendant Eustace Acted with Scienter and is the Controlling Person of PAAM**

48.     In making the misrepresentations, omissions and false statements identified

above, Eustace acted knowingly or with reckless disregard for the truth of those matters.

49.     Eustace is the President of PAAM and controls its overall day-to-day operations.

Eustace is the only registered Associated Person and listed principal of PAAM, and the only

person authorized to trade on behalf of PAAM until approximately March 2005.

50.     Eustace failed to act in good faith or knowingly induced, directly or indirectly, the

violations alleged herein.

**V.**

## VIOLATIONS OF THE COMMODITY EXCHANGE ACT
## COUNT ONE

### VIOLATIONS OF SECTIONS 4b(a)(2)(i)-(iii) OF THE ACT :
### FRAUD IN THE SALE OF FUTURES CONTRACTS

51.    The allegations set forth in paragraphs 1 through 50 are realleged and incorporated herein by reference.

52.    Beginning in or about March 2003 and continuing through the present, the Defendants have: (1) cheated or defrauded or attempted to cheat or defraud other persons; (2) willfully made or caused to be made false reports or statements to other persons; and/or (3) willfully deceived or attempted to deceive other persons, in or in connection with orders to make, or the making of, contracts of sale of commodities for future delivery, made, or to be made, for or on behalf of any other persons, where such contracts for future delivery were or could be used for the purposes set forth in Section 4b(a) of the Act, 7 U.S.C. § 6b(a), all in violation of Section 4b(a)(2)(i) - (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) - (iii) (2002).

53.    The Defendants, knowingly or with reckless disregard for the truth, violated Section 4b(a)(2)(i) - (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) - (iii) by, among other things (a) issuing false account statements to at least one LP pool participant showing fictitious futures trading; (b) omitting to inform at least one LP pool participant of the material information that defendants had not engaged in any futures trading in the name of the LP Pool or LP Pool participants; (c) providing false trading results to at least one prospective LP Pool participant showing profitable actual trading; (d) providing false account statements to at least one Feeder Fund pool participant; and (e) posting false trading results for the Off-Shore Pool on its website.

54.     In addition to his direct liability, the actions and failures of Eustace as alleged

herein were done within the scope of his employment with PAAM, and therefore PAAM is liable

for his violations of Section 4b(a)(2)(i) - (iii) of the Act, pursuant to Section 2(a)(1)(B) of the

Act, 7 U.S.C. § 2 (2002).

55.     Defendant Eustace, directly or indirectly, controlled PAAM and did not act in

good faith or knowingly induced, directly or indirectly, the acts constituting PAAM's violations

alleged in this count, and therefore Defendant Eustace is liable for PAAM's violations of Section

4b(a)(2)(i) - (iii) of the Act, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2002).

56.     Each act of issuing of false account statements; each failure to disclose material

facts; each act of showing false trading results to prospective participants; and each posting of

false trading results on the Defendants' website by the Defendants including, but not limited to,

those specifically alleged herein, is alleged as a separate and distinct violation of Section

4b(a)(2)(i) - (iii) of the Act.

### COUNT TWO

### VIOLATIONS OF SECTION 4c(b) OF THE ACT
### AND REGULATION 33.10:
### OPTIONS FRAUD

57.     The allegations set forth in paragraphs 1 through 56 are realleged and

incorporated herein by reference.

58.     Beginning in or about March 2003 and continuing through the present, the

Defendants have: (1) cheated or defrauded or attempted to cheat or defraud other persons; (2)

made or caused to be made to any other person any false report or statement thereof; and/or (3)

deceived or attempted to deceive other persons, in or in connection with an offer to enter into,

the entry into, the confirmation of the execution of, or the maintenance of, commodity option

transactions, all in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 33.10(a) – (c), 17 C.F.R. § 33.10 (a) – (c).

59.    The Defendants, knowingly or with reckless disregard for the truth, violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 33.10(a) – (c), 17 C.F.R. § 33.10 (a) – (c) by, among other things: (a) issuing false account statements to at least one LP pool participant showing fictitious commodity options trading; (b) omitting to inform at least one LP pool participant that defendants had not engaged in any commodity options trading in the name of the LP Pool or LP Pool participants; (c) providing false trading results to at least one prospective LP pool participant; (d) providing false account statements to at least one Feeder Fund pool participant; and (e) posting false trading results for the Off-Shore Pool on its website.

60.    In addition to his direct liability, the actions and failures of Eustace as alleged herein were done within the scope of his employment with PAAM, and therefore PAAM is liable for his violation of Section 4c(b) of the Act and Regulation 33.10 (a) – (c), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2 (2002).

61.    Defendant Eustace, directly or indirectly, controlled PAAM and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations of PAAM alleged in this count, and thereby Eustace is liable for PAAM's violations of Section 4c(b) of the Act and Regulation 33.10 (a) – (c), pursuant to Section 13(b) of the Act.

62.    Each act of issuing of false account statements; each failure to disclose material facts; each act of showing false trading results to prospective participants; and each posting of false trading results on the Defendants' website by the Defendants including, but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4c(b) of the Act and Regulation 33.10 (a) – (c).

## COUNT THREE

## VIOLATIONS OF SECTION 4o(1) OF THE ACT AND REGULATION 4.41(a): FRAUD BY A COMMODITY POOL OPERATOR AND AN ASSOCIATED PERSON OF A COMMODITY POOL OPERATOR

63.     The allegations set forth in paragraphs 1 through 62 are realleged and incorporated herein by reference.

64.     Beginning in or about March 2003 and continuing through the present, Defendant PAAM was a registered CPO and acted as a CPO by soliciting, accepting or receiving funds from others and engaging in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of trading in commodities for future delivery or options on futures contracts on or subject to the rules of a contract market. Defendant Eustace was a registered AP of a CPO, PAAM, and acted as an AP of a CPO by soliciting prospective pool participants.

65.     Beginning in or about March 2003 and continuing through the present, Defendant PAAM, while acting as a CPO, and Defendant Eustace, while acting as an AP of PAAM, knowingly or with reckless disregard for the truth, employed a device, scheme or artifice to defraud LP pool participants and prospective LP Pool, Off-Shore Pool and Feeder Fund pool participants, in violation of Section 4o(1)(A) of the Act, 7 U.S.C. § 6o(1)(A), and Commission Regulation 4.41(a)(1), 17 C.F.R. § 4.41(a)(1).

66.     Beginning in or about March 2003 and continuing through the present, Defendant PAAM, while acting as a CPO, and Defendant Eustace, while acting as an AP of PAAM, engaged in a transaction, practice or course of business which has operated as a fraud or deceit upon LP Pool, Off-Shore Pool and Feeder Fund pool participants and prospective LP Pool, Off-

Shore Pool and Feeder Fund pool participants, in violation of Section 4o(1)(B) of the Act, 7 U.S.C. § 6o(1)(B), and Commission Regulation 4.41(a)(2), 17 C.F.R. § 4.41(a)(2).

67.    The Defendants, knowingly or with reckless disregard for the truth, violated Sections 4o(1)(A) and (B) of the Act by, among other things: (a) issuing false account statements to at least one LP pool participant showing fictitious commodity futures and options trading; (b) omitting to inform at least one LP pool participant that the Defendants had not engaged in any commodity futures or options trading in the name of the pool or the pool participants; (c) providing false trading results to at least one prospective LP pool participant; (d) providing false account statements to at least one Feeder Fund pool participant; and (e) posting false trading results for the Off-Shore Pool on its website.

68.    The Defendants, knowingly or with reckless disregard for the truth, violated Commission Regulations 4.41(a)(1) and (2), 17 C.F.R. § 4.41(a)(1) and (2) by, among other things:  (a) posting false trading results for the Off-Shore Pool on its website, and (b) providing false trading results to at least one prospective LP pool participant.

69.    In addition to his direct liability, the actions and failures of Eustace as alleged herein were done within the scope of his employment with PAAM, and therefore PAAM is liable for his violations of Sections 4o(1)(A) and (B) of the Act, and Commission Regulation 4.41(a)(1) and (2) pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2 (2002).

70.    Defendant Eustace, directly or indirectly, controlled PAAM and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting PAAM's violations alleged in this count, and thereby Defendant Eustace is liable for PAAM's violations of Sections 4o(1)(A) and (B) of the Act, and Commission Regulation 4.41(a)(1) and (2), pursuant to Section 13(b) of the Act.

71.     Each act of issuing of false account statements; each failure to disclose material

facts; each act of showing false trading results to prospective participants; and each posting of

false trading results on the Defendants' website by the Defendants including, but not limited to

those specifically alleged herein, is alleged as a separate and distinct violation of Sections

4o(1)(A) and (B) of the Act.

72.     Each act of showing false trading results to prospective participants; and each

posting of false trading results on the Defendants' website by the Defendants including, but not

limited to those specifically alleged herein, is alleged as a separate and distinct violation of

Sections 4o(1)(A) and (B) of the Act. and Commission Regulation 4.41(a)(1) and (2).

## VI.

## **RELIEF REQUESTED**

WHEREFORE, the Commission, respectfully requests that this Court, as authorized by

Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

a)     a permanent injunction prohibiting the Defendants and any other
person or entity associated with them, including any successor
thereof, from engaging in conduct violative of Sections 4b(a)(2)(i)
- (iii), 4c(b), and 4o(1) (A) and (B) of the Act and Sections 4.41
and 33.10 of the Commission's Regulations, and from engaging in
any commodity-related activity, including soliciting new pool
participants or pool funds;

b)     an order directing the Defendants to disgorge, pursuant to such
procedure as the Court may order, all benefits received from the
acts or practices which constitute violations of the Act or
Regulations, as described herein, and interest thereon from the date
of such violations;

c)     an order directing the Defendants to make full restitution to every
pool participant whose funds were received by him as a result of
acts and practices which constituted violations of the Act and
Regulations, as described herein, and interest thereon from the date
of such violations;

    d)      an order requiring Defendants to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts of not more than the higher of $120,000 for each violation before October 24, 2004 and $130,000 for violations on or after October 24, 2004, or triple the monetary gain to Defendants for each violation of the Act and Regulations described herein; and

    e)      such other and further remedial ancillary relief as the Court may deem appropriate.

Date:  June 22 , 2005

Respectfully submitted by,

**ATTORNEYS FOR PLAINTIFF**

William Longwitz, Esq., MS Bar No. 101047
Karen Kenmotsu, Esq., NJ Bar No. 05713-1993
Gretchen L. Lowe, Esq.,  DC Bar No. 421995
Division of Enforcement
Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581
Phone – (202) 418-5642
Facsimile – (202) 418-5523

Complaint              16

**JP**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Case No. _____ $05CV2973$ _____

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PAUL M. EUSTACE, AND | ) |
| PHILADELPHIA ALTERNATIVE ASSET | ) |
| MANAGEMENT COMPANY, LLC | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**(Proposed) ORDER OF PRELIMINARY INJUNCTION**

This matter comes before the Court on the motion for preliminary injunction filed

by plaintiff, the Commodity Futures Trading Commission ("Commission"). The Court

has previously issued an *ex parte* statutory restraining order freezing the Defendants'

assets, appointing a temporary receiver and containing other relief. The Court has also

ordered the Defendants to show cause why a preliminary injunction should not be issued

against them to preserve the status quo pending the trial in this case. The Court has

reviewed the memoranda, declarations, and other exhibits filed with the Court, and

having heard oral argument and now being fully advised in the premises finds that:

(1)     This Court has jurisdiction over the subject matter of this case, and

Section 6c of the Commodity Exchange Act ("Act"), 7 U.S.C. §13a-1 (2002);

(2)     Venue lies properly within this District pursuant to Sections 6c(e) of the

Act, 7 U.S.C. §13a-1(e)(2002);

(3)     There is good cause to believe that Defendants Paul M. Eustace ("Eustace") and Philadelphia Alternative Asset Management Co., LLC. ("PAAM") have engaged in, are engaging in and are about to engage in: fraud in violation of Sections 4b(a)(2)(i) - (iii); 4c(b); and 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) - (iii); 6c(b); and 6o(1) (2002), and Sections 4.41(a)(1) and (2) and 33.10 of the Commission's Regulations (the "Regulations"), 17 C.F.R. §§ 4.41(a)(1) and (2) and 33.10. (2004);

(4)     There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for investors in the form of monetary redress will occur from the sale, transfer, assignment, or other disposition of assets or records unless the Defendants are immediately restrained and enjoined by Order of this Court;

(5)     An asset freeze as to Defendants is necessary to assure the ability of the Court to order payment of restitution, disgorgement, and civil monetary penalties as authorized and for the benefit of investors;

(6)     An accounting is appropriate to determine the location and disposition of investor funds;

(7)     It is necessary to order the repatriation of assets to assure the ability of the Court to order payment of restitution, disgorgement and civil monetary penalties as authorized and for the benefit of investors;

(8)     Good cause exists for the appointment of a permanent receiver in order to prevent waste and dissipation of assets to the detriment of investors and to

assess and ensure the proper operation of the commodity pools currently operated by the Defendants; and

(9) Absent this order, there is a reasonable likelihood that the violations will be repeated.

## DEFINITIONS

For the purposes of this Order, the following definitions apply:

1.      "Assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, including but not limited to chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, receivables, contracts, insurance policies, and all cash, wherever located, whether in the United States or abroad.

2.      The term "document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes, but is not limited to, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

3.      "Defendants" means Paul M. Eustace and Philadelphia Alternative Asset Management Company LLC, and any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee, or attorney of Defendants, and any other person who receives actual notice of this Order by personal service or otherwise insofar as he or she is acting in concert or participation with the Defendants.

3

## I.

## **RELIEF GRANTED**

### *Prohibited Conduct*

**IT IS HEREBY ORDERED** that until a final adjudication on the merits may be had, Defendants are restrained and enjoined from directly or indirectly:

4.      In or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of any other persons, where such contract for future delivery was or could be used for (A) hedging any transaction in interstate commerce in such commodity or the products or byproducts thereof, or (B) determining the price basis of any transaction in interstate commerce in such commodity, or (C) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof,

   (A)      cheating or defrauding or attempting to cheat or defraud other persons;

   (B)      willfully making or causing to be made to other persons false reports or statements thereof, or willfully entering or causing to be entered for other persons false records thereof; and

   (C)      willfully deceiving or attempting to deceive other persons; in violation of Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii).

5.      In or in connection with an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transactions:

(A)     cheating or defrauding or attempting to cheat or defraud any other

persons;

(B)     making or causing to be made to any other person any false report or

statement thereof; and

(C)     deceiving or attempting to deceive any other person

in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) and Regulation

33.10, 17 C.F.R. §33.10.

6.      As Commodity Pool Operators ("CPOs"), or Associated Persons ("APs")
of CPOs, employing any device, scheme, or artifice to defraud any pool participant or
prospective pool participant, or engaging in any transaction, practice or course of
business which operates as a fraud or deceit upon any pool participant or prospective pool
participant, by use of the mails or any means or instrumentality of interstate commerce, in
violation of Section 4o(1) (A) and (B) of the Act;

7.      As a CPO or a principal of a CPO, advertising in any manner which
employs any device, scheme, or artifice to defraud any pool participant or prospective
pool participant, or involves any transaction, practice, or course of business which
operates as a fraud or deceit upon any pool participant or prospective pool participant in
violation of Section 4.41(a)(1) and (2) of the Regulations, 17 C.F.R. §4.41(a)(1) and (2).

8.      Defendants and any other person or persons acting in concert or
participation with Defendants are prohibited from soliciting new customers or otherwise
soliciting, accepting or receiving funds or other property from any existing or prospective
participant in any investment relating to commodity futures or options contracts.

## II.

### *Asset Freeze*

**IT IS FURTHER ORDERED that:**

9.      Defendants, except as otherwise ordered by this Court, are restrained and enjoined from directly or indirectly:

(A)     transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise disposing of any assets, wherever located, including assets held outside the United States, except as provided in Paragraphs III and VI of this Order, or as otherwise ordered by the Court;

(B)     Opening or causing to be opened any safe deposit boxes titled in the name or subject to access by any of the defendants.

(C)     Notwithstanding the provisions of this paragraph, defendants shall transfer possession of all assets of the receivership defendants pursuant to paragraph VI of this Order.

### III.

### *Financial Institutions*

**IT IS FURTHER ORDERED**, pending further Order of this Court, that any financial or brokerage institution, business entity, or person that holds, controls, or maintains custody of any account or asset titled in the name of, held for the benefit of, or otherwise under the control of any Defendant, or has held, controlled, or maintained custody of any such account or asset of any Defendant at any time since March 2002, shall:

(A)     Prohibit Defendants, and all other persons from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling or otherwise disposing of any such asset except as

directed by further order of the Court or, as to receivership assets, as
directed by the Receiver appointed herein;

(B)     Deny Defendants, and all other persons access to any safe deposit box that
is:

1.      titled in the name of any defendant, either individually or jointly;
or

2.      otherwise subject to access by any defendant.

**Notwithstanding this Paragraph, the Receiver appointed
herein shall be provided with access to any safe deposit box titled in
the name of, or subject to access by, the Defendants;**

(C)     Provide the Receiver and counsel for the Commission, within five (5)
business days of receiving a copy of this Order, a statement setting forth:

1.      the identification number of each such account or asset titled in the
name, individually or jointly, of any of the Defendants, or held on
behalf of, or for the benefit of, any of the Defendants, or under the
control of any of the Defendants;

2.      the balance of each such account, or a description of the nature and
value of such asset as of the close of business on the day on which
this Order is served, and, if the account or other asset has been
closed or removed, the date closed or removed, the total funds
removed in order to close the account, and the name of the person
or entity to whom such account or other asset was remitted; and

        3.      the identification of any safe deposit box that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any defendant;

D.      Upon request by the Receiver or the Commission, promptly provide the Receiver and the Commission with copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

E.      Cooperate with all reasonable requests of the Receiver relating to implementation of this Order, including transferring funds at the Receiver's direction and producing records related to Defendants' accounts.

## IV.

### *Accounting*

**IT IS FURTHER ORDERED** that within five (5) business days following the service of this Order, each Defendant shall, if they have not done so already:

(A)     Provide the Commission and the Receiver with a full accounting of all funds, documents, and assets outside of the United States which are (1) titled in the name individually or jointly of such defendant; or (2) held by any person or entity, for the benefit of any defendant; or (3) under such defendant's direct or indirect control, whether jointly or singly;

(B)     Transfer to the territory of the United States and deliver to the Receiver all funds, documents, and assets located in foreign countries which are (1) titled in the name individually or jointly of such defendant; or (2) held by any person or entity, for the benefit of any defendant; or (3) under such defendant's direct or indirect control, whether jointly or singly;

(C)     Provide the Commission access to all records of accounts or assets of the defendants held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to this Order.

## V.

### *Permanent Receiver*

**IT IS FURTHER ORDERED** that _____ is appointed permanent Receiver for Defendant PAAM and any partners, affiliates or subsidiaries or related entities of the Defendants (hereinafter referred to as the "receivership defendants"), with the full powers of an equity receiver. The Receiver shall be the agent of this Court in acting as Receiver under this Order.

## VI.

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A.     Assume full control of the receivership defendants by removing defendant Eustace, and any officer, independent contractor, employee, or agent of the receivership defendants, from control and management of the affairs of the receivership defendants; to the extent necessary, the Receiver may authorize the Defendant Eustace, subject to monitoring by the Receiver, to trade any accounts held in the name of or for the benefit of any commodity pools, pool participants or other clients managed by Defendants for the limited purpose of unwinding any open positions held in the accounts,

9

including liquidating or covering the exposure of any open positions in accordance with trading strategies and applicable trading authorizations, until the Receiver hires a person to manage and direct the trading of all accounts controlled by Defendants.

B.   Take exclusive custody, control, and possession of all the funds, property, mail and other assets of, in the possession of, or under the control of the receivership defendants, wherever situated.  The Receiver shall have full power to sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, books, records, work papers, and records of accounts, including computer-maintained information, and other papers and documents of the receivership defendants, including documents related to customers or clients whose interest are now held by or under the direction, possession, custody or control of the receivership defendants;

C.   Take all steps necessary to secure the business premises of the receivership defendants, including but not limited to premises located at 2701 Renaissance Boulevard, Fourth Floor, King of Prussia, Pennsylvania 19406; and any and all other premises under the control of the defendants;

D.   Preserve, hold and manage all receivership assets, and perform all acts necessary to preserve the value of those assets, in order to prevent any loss, damage or injury to investors, pool participants or clients;

E.   Prevent the withdrawal or misapplication of funds entrusted to the receivership defendants, and otherwise protect the interests of investors, pool participants or clients;

F.   Manage and administer the receivership defendants by performing all acts incidental thereto that the receiver deems appropriate, including hiring or dismissing any and all personnel or suspending operations;

G.     Collect all money owed to the receivership defendants;

H.     Initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal or foreign court necessary to preserve or increase the assets of the receivership defendants or to carry out his or her duties pursuant to this Order;

I.     Choose, engage and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

J.     Issue subpoenas to obtain documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate;

K.     Open one or more bank accounts as designated depositories for funds of the receivership defendant.  The Receiver shall deposit all funds of the receivership defendants in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts; and

L.     Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the receivership defendants prior to the date of entry of this Order, except for payments that the Receiver deems necessary or advisable to secure assets of the receivership defendants.

## VII.

**IT IS FURTHER ORDERED** that, immediately upon service of this Order upon them, Defendants and any other person or entity served with a copy of this Order, shall

11

immediately or within such time as permitted by the Receiver in writing, deliver over to the Receiver:

A.     Possession and custody of all funds, assets, property, and all other assets, owned beneficially or otherwise, wherever situated, of the receivership defendants;

B.     Possession and custody of documents of the receivership defendants, including but not limited to, all books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

C.     Possession and custody of all precious metals, other commodities, funds, and other assets being held by or on behalf of the receivership defendants or on behalf of the receivership defendants' customers;

D.     All keys, computer passwords, entry codes, and combinations to locks necessary to gain or to secure access to any of the assets or documents of the receivership defendants, including but not limited to, access to the receivership defendants' business premises, means of communication, accounts, computer systems, or other property; and

E.     Information identifying the accounts, employees, properties or other assets or obligations of the receivership defendants.

## VIII.

**IT IS FURTHER ORDERED** that Defendants, and all other persons or entities served with a copy of this order shall cooperate fully with and assist the Receiver. This cooperation and assistance shall include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercising the authority; providing any password required to access any computer or electronic files in any medium; and

discharging the responsibilities of the Receiver under this Order, and advising all persons who owe money to the receivership defendants that all debts should be paid directly to the Receiver.

**IX.**

**IT IS FURTHER ORDERED** that except by leave of the Court, during the pendency of the receivership ordered herein, the Defendants, and all other persons and entities be and hereby are stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of, the receivership defendants, the Receiver, receivership assets, or the Receiver's duly authorized agents acting in their capacities as such, including but not limited to, the following actions:

A.   Commencing, prosecuting, litigating or enforcing any suit, except that actions may be filed to toll any applicable statute of limitations;

B.   Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of the receivership defendants or any property claimed by the receivership defendants, or attempting to foreclose, forfeit, alter or terminate any of the receivership defendants' interests in property, whether such acts are part of a judicial proceeding or otherwise;

C.   Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the receivership defendants, or the Receiver, or any agent of the Receiver; and

13

D.   Doing any act or thing to interfere with the Receiver taking control, possession or management of the property subject to the receivership, or to in any way interfere with the Receiver or the duties of the Receiver; or to interfere with the exclusive jurisdiction of this Court over the property and assets of the receivership defendants.

This Paragraph does not stay the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

### X.

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, or in the possession or control of, or which may be received by the receivership defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order.  The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

### XI.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 754 (1994), the Receiver shall file with the Clerk of the Court a bond in the amount of $_____ with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.

## XII.

## BOND NOT REQUIRED OF PLAINTIFF

**IT IS FURTHER ORDERED THAT:**

Plaintiff Commission is an agency of the United States of America and,

accordingly, it is not necessary for the Commission to post bond.

## XIII.

## FORCE AND EFFECT

**IT IS FURTHER ORDERED THAT:**

This Order shall remain in full force and effect until further order of this Court,

and that this Court retains jurisdiction of this matter for all purposes. The Statutory

Restraining Order previously ordered by the Court as to all Defendants shall remain in

full force and effect until further order of this Court.

**IT IS SO ORDERED.**


Dated: _____          _____

UNITED STATES DISTRICT COURT JUDGE