IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 05-2973 |
| PAUL M. EUSTACE, et al. | : | |

**MEMORANDUM AND ORDER**

Various petitions for payment of fees are pending in this case. The Court will presently consider the Receiver's First Application for Payment to Peter Hearn, PC, for Services Rendered as Special Counsel to the Receiver (Doc. No. 376) and a similar Application for Payment to Lawrence J. Fox for his work as an expert on professional responsibility and legal ethics (Doc. No. 399).

The roles of Mr. Hearn and Mr. Fox in this litigation were discussed in the Master's Report (Doc. No. 351), and this Court's Order of May 3, 2007 (Doc. No. 375). As reviewed in those documents, the Receiver decided to retain Mr. Hearn for advice on the situation involving UBS Cayman. The Receiver also retained Mr. Fox, and Mr. Fox's report, as is also true of the expert report submitted on behalf of Man Financial, Inc. ("Man"), was of value to the Court in determining the appropriate course of action with respect to the Receiver's undisclosed relationship with various UBS entities.

Although the Court reiterates its prior finding that Mr. Hodgson cannot be faulted for consulting with Mr. Hearn out of an abundance of caution, and there is no evidence of bad faith on anyone's part, these facts do not necessary lead to a conclusion that the entirety of Mr. Hearn's or Mr. Fox's fees, or for that matter the time spent by the Receiver himself or by the

Stradley firm on these issues, are necessarily compensable out of the receivership estate.

Every law firm must bear a certain amount of expense in complying with ethical constrictions, which are part of a firm's overhead and ongoing business expenses, and are not payable by clients. When an attorney is acting as a court-appointed receiver, these concerns are heightened by the fiduciary relationship which the Receiver has to the Court and investors who are allegedly defrauded, as previously discussed in Memoranda in this case.

The Court has received and reviewed the objection of the Plaintiff Commodity Futures Trading Commission ("CFTC") to the application to pay Mr. Hearn (Doc. No. 388). The CFTC reiterates its position that Mr. Hodgson violated the duty of disclosure and that the situation Mr. Hodgson felt warranted retaining Mr. Hearn could have been avoided if he had made a timely disclosure of his UBS connection. The Court has also reviewed the objection to the fee application for Mr. Hearn filed by Man (Doc. No. 379).

The Receiver has replied to both objections and asserts that the conflict issue raised by Man was "spurious" and that the CFTC's position is "fanciful." The Court rejects these accusations and suggests the parties and counsel deal with the facts rather than rhetoric. Any party in a case has the privilege and prerogative to raise a non-frivolous issue concerning a conflict of interest. Whatever Man's motives may be, its complaint was not frivolous. Mr. Hodgson's not disclosing his prior relationships with UBS entities is the circumstance which led the Court for the reasons stated in the May 3, 2007 opinion to appoint a Receiver Ad Litem in place of Mr. Hodgson for purposes of Civil Action 06-1944. The Receiver must take this conclusion into account when advancing claims that attorneys' and experts' fees arising out of

that circumstance are payable by the receivership estate.[1]

The Receiver's applications point to the terms of the Statutory Restraining Order ("SRO") entered by Judge Padova, and the September 19, 2005 Consent Order, which authorized the Receiver to retain various other counsel and experts to assist him. The terms of the SRO and the Consent Order do not necessarily mean that these individuals who have been retained on matters relating to an after-the-fact consultation on ethical matters are payable out of the receivership estate. Circumstances may have been different if Mr. Hodgson had consulted such an expert at the onset of the case when he first became aware that UBS was involved in this matter, and perhaps with the written opinion of a professional liability expert, brought the issue forward. On the present record, the Court questions the justification for paying all of these fees out of the receivership estate, given the overall circumstances of Mr. Hodgson's disqualification.

These applications by the Receiver fail to distinguish between the expenditure of time on behalf of the Receiver and time spent on behalf of the Stradley law firm. They also do not distinguish between time directly related to the litigation, as opposed to time spent on the conflict and disclosure issues. The Court's May 3, 2007 Memorandum distinguished between the consequences of the Receiver's failure to disclose the UBS connection from whether the Stradley firm could continue as counsel for the newly appointed Receiver Ad Litem for the Man litigation. The Court concludes that this distinction is necessary. Checking a conflict cannot properly be charged to a potential new client who inquired whether an attorney can represent the client in a litigation matter. The Stradley firm, which has been paid several million dollars in fees so far in

---

[1]The Court notes that the Receiver also authorized the retention of the Pepper Hamilton law firm to assist Mr. Hearn, but the Receiver has not submitted any application for the payment of fees to Pepper Hamilton.

this matter, with no collection risks, must bear ethical compliance expenses itself. Any doubt on these issues must be resolved in favor of the receivership estate.

In view of this dispute, it is unfortunately necessary to revisit footnote 4 of the May 3, 2007 Memorandum, which noted inconsistencies in the position taken by the Receiver and Stradley on the UBS issue. (If indeed the Receiver had no duty of disclosure on UBS Cayman issues, there would have been no necessity to retain Mr. Hearn.) Although the Court does not fault the Receiver for retaining Mr. Hearn, that does not necessarily mean that his consultation with the Receiver and the Stradley lawyers is totally compensable out of the receivership estate. It appears from his time entries that some significant amount of Mr. Hearn's time was spent in discussions with Stradley lawyers about whether there was any conflict as well as about the Master's appointment and similar matters.

Similarly, it appears that Mr. Fox was retained to justify the Receiver's lack of disclosure as well as to show that the disqualification of the Stradley firm sought by Man and the CFTC was not required under ethical rules. The Receiver may have a valid point that Mr. Fox's report was of value to the receivership estate to the extent it contributed to the Court's conclusion that the Stradley firm could remain as counsel, thus obviating the vastly greater expense of substituting entirely new counsel. Although the Court agreed with Mr. Fox's conclusion as to the Stradley firm, that does not necessarily mean that all his fees are payable by the receivership estate.

At this point, pending a further hearing, the Court tends to agree with the CFTC that based on the papers filed to date, only a portion of the fees sought by the Receiver for payment to Mr. Hearn are properly chargeable to the receivership estate. Mr. Hearn worked diligently and promptly, and deserves to be paid in full, but the Stradley firm must shoulder some of that

expense.

AND NOW, this 18th day of June, 2007, it is hereby ORDERED as follows:

1. The Court will approve payment to Mr. Hearn out of the receivership estate of $23,373.50, the amount calculated by the CFTC of Mr. Hearn's time spent on matters directly related to the situation of UBS Cayman in the lawsuit. The allocation is within the Receiver's discretion.

2. Mr. Fox's fee and the balance of Mr. Hearn's fee should be paid by the Stradley firm without prejudice to reimbursement, as discussed below.

3. The Receiver and the Stradley firm should revisit what occurred following the May 2, 2006 meeting, concerning any time spent either directly or indirectly relating to UBS Cayman. Time spent by Stradley attorneys in actual litigation matters, such as attending depositions of UBS Cayman personnel, is compensable by the receivership estate. However, the Receiver must present more specific reasons, and/or legal authorities, that time spent on discussions on ethical issues within the firm, or with others, including experts, on matters arising out of the Receiver's failure to disclose regarding UBS, or seeking payment for time expended, is payable from the receivership estate, before the Court will allow such time and fees on these issues to be payable out of the receivership estate.[2] Mr. Fox's time, limited to his defense of the Stradley firm remaining as litigation counsel, may also be payable from the receivership estate.

4. The Receiver and the Stradley firm shall assess their position and advise the Court within thirty (30) days. The Stradley firm may, if it so chooses, retain counsel at its own expense

---

[2] These considerations may cause the Receiver to adjust prior or pending fee applications for himself and the Stradley firm.

for this purpose, communicate with the CFTC on this issue, and/or submit legal authorities to justify its position. If appropriate, these pleadings may be filed under seal, and the Court will consider what further action to take, which may include an evidentiary hearing if disputes on material facts exist.

   5. Plaintiff CFTC has requested a period of time for responses to all payment requests, which will be granted. The Court will not act on any fee requests for at least fourteen (14) days after the request is filed, and any party or investor who wishes to submit an objection to a fee petition may do so within the fourteen (14) day time period.

   6. The CFTC has also requested an order that all objections to fee applications be accessible at the Receiver's website, www.PAAMLLC.com. This request will be granted. The Receiver, having consistently posted all pleadings, including fee applications on the website, shall also post all objections to the fee applications on the website.

         BY THE COURT:

         s/Lawrence Stengel for

Date: 6/18/07

         Michael M. Baylson, U.S.D.J.

O:\CIVIL\05-2973 Commodity Futures v. Eustace\Commodity Futures Order 6-15-07.wpd