IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 05-2973 |
| PAUL M. EUSTACE, et al. | : | |

**MEMORANDUM RE: MOTION FOR CONTEMPT**

**Baylson, J.**                                                                                          **April 25, 2008**

The Receiver had previously filed a Motion to Hold Paul M. Eustace in Contempt, (Doc. No. 468), and this Court issued a Memorandum and Order concerning this Contempt Motion on December 12, 2007 (Doc. No. 498). The prior Order states the background and several issues which will not be repeated. However, since the Memorandum and Order of December 12, 2007, the Receiver has filed, as requested by the Court, updates dated December 21, 2007 and January 31, 2008. In addition, at the hearing held on March 5, 2008, comments from the Receiver's counsel indicated that there were no further developments relevant to the Contempt Motion and that additional depositions of Mr. Eustace were scheduled to take place concerning his assets.

Seeing no reason for further delay, the Court finds clear and convincing evidence that Mr. Eustace is in contempt of Court for his various actions relevant to this case, but will delay any remedial order until the completion of the deposition of Eustace, and any other related depositions or other matters which may be scheduled.

In the Memorandum of December 12, 2007, I noted actions that Eustace could take that would mitigate his prior conduct. From the letters dated December 21, 2007 and January 31, 2008, submitted by the Receiver's counsel, it appears that Mr. Eustace took all the actions he

promised to take, albeit belatedly.

Mr. Eustace was served with process in this case and executed the Consent Decree entered on July 13, 2007 (Doc. No. 426). Mr. Eustace has not appeared in this Court at any time, but has participated in several hearings by telephone. No counsel has entered an appearance for Mr. Eustace in this proceeding; however, from time to time, Mr. Eustace has had a Canadian lawyer sit with him while he was participating in a telephone conference. The Court infers that Mr. Eustace has declined to appear in this Court because of his fear of being arrested pursuant to the indictment that was returned by a grand jury sitting in this district some months ago, which is still pending. However, I have no knowledge as to whether the government has initiated any process to secure Mr. Eustace's return to this district to face trial.

After the Receiver filed the Motion for Contempt, there were further hearings, and Mr. Eustace participated in some of them by telephone. However, he did not participate in the extensive evidentiary hearing which took place on November 15, 2007. Thereafter, Mr. Eustace submitted several letters to the Court, as did counsel for the Receiver, bearing upon the Motion for Contempt.

The Court finds that although Mr. Eustace has recently taken actions to attempt to cure defaults in compliance with the Statutory Restraining Order entered by Judge Padova on June 23, 2005, as well as the Consent Decree, the record shows that a number of his actions were in violation of prior Orders.[1]

---

[1] The record before this Court shows that Mr. Eustace has from time to time relied on advice given to him by counsel and others located in Canada, and that based on the alleged advice he received from them, Mr. Eustace committed certain acts or omitted to do other things that he was obliged to do under the Statutory Restraining Order and the Consent Decree. The present Order addresses only the Motion for Contempt against Mr. Eustace, but the Court cannot

I.    **Findings of Fact**

The Court finds from the record of this case that the following conduct by Eustace was in contempt of the Orders of this Court dated June 23, 2005, September 21, 2005 (Doc. No. 37), Order dated May 23, 2007 (Doc No. 392), and a Consent Judgment against Eustace dated July 13, 2007 (Doc. No. 426).

1. In the affidavit of Paul M. Eustace, attached to Eustace's Motion for an Order Annulling his Bankruptcy in Canada, Eustace admitted that he was served with, and knew of, the Statutory Restraining Order filed and entered by this Court (Hon. John R. Padova) on or about June 23, 2005. The June 24, 2005 e-mail from his lawyer, Thomas K. Cauley, that was attached as Exhibit 10 to the Motion leaves no doubt that Eustace was aware of the Statutory Restraining Order and its implications, no later than June 24, 2005.

2. On or about June 25, 2005, Eustace sold his 1988 Porsche 911 Turbo Slantnose Convertible for $48,000.00 (US), failed to turn the proceeds over to the Receiver, and endorsed the $48,000.00 (US) check he received to one of his Canadian attorneys, David Pilo ("Pilo"), to hold "in trust for Paul Eustace."

3. On or about June 28, 2005, Eustace liquidated certain US Treasury Strips that he held in an account in his individual name at TD Waterhouse, failed to turn the proceeds over to the Receiver and caused the Bank to issue a bank draft in the sum of $243,644.00 (US) to his wife, Laura Eustace. Laura Eustace, acting on instructions from Paul Eustace, which he knew

---

refrain from noting if the allegations of the Receiver and Mr. Eustace are correct, that Canadian authorities would be justified in looking into some of the conduct asserted as to those individuals, some of whom may be lawyers in Canada, in connection with Mr. Eustace's obligations under the Orders issued by this Court.

were in violation of this Court's Orders, distributed these funds to various third parties, such as the builder of a vacation house, his various Canadian attorneys and the private school attended by his children, instead of turning them over to the Receiver. Paul Eustace knew that these funds should have been turned over to the Receiver.

      4.      After the Statutory Restraining Order was entered, Eustace sold, in exchange for $3,500.00 (CAD), the Rolex watch purchased for him by PAAMCo and failed to turn the proceeds over to the Receiver, but rather, kept the proceeds for his own personal use.

      5.      On or about July 15, 2005, Eustace sold three (3) of PAAMCo's computer servers and other computer hardware to Frontline Technologies for $6,000.00 (CAD), failed to turn the proceeds over to the Receiver and transferred the funds to Pilo to hold in trust for the benefit of Eustace. By selling the computer servers and other computer hardware to a third party rather than giving access to the Receiver, Eustace is responsible for potentially key data and information about this case being lost or destroyed.

      6.      On or about September 30, 2005, Eustace and Pilo negotiated the termination of PAAMCo's pre-paid lease of office space in Canada, obtained the right to receive approximately $19,988.35 (CAD) of the pre-payment made by PAAMCo, failed to turn these funds over to the Receiver and directed the funds to be paid to Pilo to hold in trust for Eustace.

      7.      On or about October 27, 2005, Eustace converted and sold PAAMCo's telephone system to Frontline Technologies for $36,000.00 (CAD), failed to turn the proceeds over to the Receiver and directed all proceeds to be paid to Pilo in trust for Eustace. These funds, along with other funds in two other escrow accounts held by Pilo, were used to pay for the personal benefit of Eustace, including a $35,000.00 (CAD) down payment on a $695,000.00 (CAD) house

purchased solely in the name of Laura Eustace.

8. On or about April 28, 2006, Eustace attempted to sell his vacation home (the "Cottage") to third parties for $455,000.00 (CAD) without the prior knowledge of the Receiver or the CFTC and without advising the Receiver that he had accepted an offer to purchase the Cottage.

9. Throughout the third and fourth quarters of 2005 and all of 2006, Eustace caused his various Canadian lawyers to make each and every transfer from the escrow and trust accounts that they held on his behalf for the purpose of paying his legal fees, providing cash withdrawals, and paying his credit card bills and other personal expenses, all without the knowledge or consent of the Receiver. All funds in the escrow and trust accounts held by the Canadian lawyers belonged to the Receivership estate.

10. On June 1, 2007, approximately one week after this Court issued and served upon Eustace the Stipulated Order stating that Eustace "shall waive solicitor-client (or attorney-client, as applicable) privilege or any other privilege" for the purpose of allowing his attorneys to disclose information regarding Eustace's assets, Eustace sent an e-mail to his primary Canadian attorney and current employer, Jonathan Marler ("Marler"), stating that, in spite of the Stipulated Order, he did not waive such privilege and wanted to continue to conceal the $28,000 trust account held with Paul Stunt ("Stunt") of the O'Connor MacLeod Hanna firm (the "O'Connor Firm").

11. On or about August 7, 2007, Eustace caused the O'Connor firm to issue a check to Eustace in the amount of $2,000.00 (CAD) from the funds that Eustace had provided to the O'Connor firm after entry of the Restraining Order. The check was issued to Eustace while the

O'Connor firm was refusing, notwithstanding Eustace's waiver, to provide evidence to the Receiver about Eustace's assets and opposing the Receiver's efforts to obtain a Canadian court order compelling the production of such evidence.

## II.     Legal Standard

In order for a court to hold a party in civil contempt, the moving party must establish: "(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." Roe v. Operation Rescue, 54 F.3d 133, 137 (3d Cir. 1995). The plaintiff has the burden to show that the defendant is in contempt and the standard is one of "clear and convincing evidence". Quinter v. Volkswagon of America, 676 F.2d 969, 974 (3d Cir. 1982) (quoting Fox v. Capital Co., 96 F.2d 684, 686 (3d Cir. 1938)). However, the plaintiff need not show wilfulness, and good faith is not a defense to a civil contempt motion. Robin Woods, Inc. v. Woods, 28 F.3d 396, 398 (3d Cir. 1994).

## III.    Conclusions of Law

1.     The facts established above have been proven by the Receiver by clear and convincing evidence.

2.     Paul Eustace has knowingly violated the Statutory Restraining Order, the Consent Decree, and the other Orders cited above by his conduct as found above.

3.     Paul Eustace is in contempt of this Court.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 05-2973 |
| PAUL M. EUSTACE, et al. | : | |

## ORDER

AND NOW, this 25TH day of April, 2008, in connection with the above findings of fact and conclusions of law, it is hereby ORDERED as follows:

1. Paul Eustace is enjoined from taking any action of any kind, directly or indirectly, in further violation of the Orders of this Court.

2. The Receiver shall file a report with the Court within fourteen (14) days as to the current status of depositions and other matters pertaining to Paul Eustace and the subject matter of this case.

3. Within fourteen (14) days the Receiver shall also submit a proposed form of Order as to the remedies that the Receiver asserts the Court should adopt in connection with the finding of contempt, taking into account any ameliorative action taken by Paul Eustace.

4. Paul Eustace may respond to these filings within fourteen (14) days thereafter.

5. The Court will hold a hearing on all issues presented by this Order, including issues raised in the responses by the Receiver and Paul Eustace, on June 4, 2008 at 10:00 a.m. in Courtroom 3A.

BY THE COURT:

s/Michael M. Baylson

Michael M. Baylson, U.S.D.J.

O:\CIVIL\05-2973 Commodity Futures v. Eustace\Commodity Future - Memo Eustace Contempt 4-24-08.wpd