**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 05-2973 |
| PAUL M. EUSTACE, et al. | : | |

**MEMORANDUM RE: AWARD OF FEES AND COSTS**

**Baylson, J.**                                                                 **August 8, 2008**

On July 18, 2008, the Court held a hearing regarding the Third Application of the Joint

Liquidators and counsel for Fees and Expenses for the period October 2007 through December

31, 2007 (Doc. No. 559).

A brief history leading up to this Memorandum is appropriate.  The Philadelphia

Alternative Asset Fund Ltd. (referred to in this litigation as the "Offshore Fund") had been

organized in the Cayman Islands as a hedge fund, focusing on commodity futures, and had

attracted approximately $250,000,000 in investments over a period of years from investors

located in the U.S. and other countries.  The Offshore Fund was headquartered in the Cayman

Islands, and Cayman directors were appointed, ostensibly to direct the operations of the fund.

The fund's management was headquartered in a suburban Philadelphia office, and its affairs were

controlled by one individual, Paul M. Eustace, ("Eustace") who over a course of several years,

lost most of the money that had been invested through fraud and poor investment decisions.

The Plaintiff in this case, the Commodity Futures Trading Commission ("CFTC")

secured the appointment of the Receiver, and has participated in numerous Court hearings.

Eustace has agreed to a consent decree in this Court, and has been indicted by a federal grand jury in this district.  This Court authorized litigation to recover damages from third parties, directed by a Receiver Ad Litem.  Through the efforts of the Receiver and the Receiver Ad Litem, approximately one-half of the total amount lost has been recovered and is being returned to investors.

At the outset of this litigation, because several of the entities, including the Offshore Fund through which the investors' money passed, had been organized in the Cayman Islands and were now defunct, the Cayman Islands Grand Court, a court of general jurisdiction in the Cayman Islands, a sovereign country, gave notice that it was intending to appoint liquidators for the defunct Offshore Fund.  The Receiver attempted to persuade the Grand Court to appoint him as liquidator in the Cayman Islands, which the undersigned supported.  See Doc. No. 75.

However, the Grand Court rejected the Receiver's application and instead appointed two individuals, both of whom were accountants in the Cayman Islands as the Joint Liquidators. After the Grand Court refused to appoint the Receiver as the liquidator in the Cayman Islands, this Court encouraged the development of a "protocol" between the Receiver and the Joint Liquidators, and approved the agreement.  With no disrespect intended to the Cayman Court, appointment of the Joint Liquidators has resulted in significant additional fees, all of which detracted from the net returns to the investors.  In retrospect, little was gained from the appointment of the Joint Liquidators and their own retention of various counsel for advice in the Cayman Islands.

With the benefit of hindsight, it may have been preferable for this Court to have ignored the corporate organization and proceedings in the Cayman Islands and to have conducted this

-2-

litigation based on a finding that the entire corporate setup in the Cayman Islands was a sham, designed to avoid U.S. regulations and taxes.  However, at the outset of the case, such a conclusion may have been difficult to justify.  However, even if the Court could not have ignored the existence of various corporations in the Cayman Islands, and the applicability of Cayman Islands law, little was gained by the appointment of the Joint Liquidators, as the Receiver could have performed the ministerial duties and consulted additional Cayman Islands and/or British counsel as necessary.  The CFTC did not take a strong position concerning the proceedings in the Cayman Islands including any objection to the appointment of the Joint Liquidators.

There is also some evidence that some of the investors were not U.S. residents or citizens, and therefore, they may have found some comfort in the fact that the Offshore Fund was organized under Cayman Islands law, as providing appropriate tax and regulatory benefits and to give them some comfort that their investments were being safeguarded.  However, whatever comfort they may have felt at the time, the facts show that the fraud was successful and the losses incurred, despite Cayman Islands directors operating under Cayman Islands laws.

There have been two prior Applications by the Joint Liquidators.  The First Application (Doc. No.  287) was denied without prejudice.  See Memorandum dated April 4, 2007 (Doc. No. 352).  Upon providing additional information, the Second Application (Doc. No. 485) was largely approved by Order dated December 27, 2007 (Doc. No. 512).  In the Court's Memorandum of April 4, 2007, there is a review of the applicable legal principles governing these Applications, which will not be repeated.  The Second Application covered time through September 2007.

The pending Third Application, as noted above, is for fees and expenses during the period

October 2007 through December 2007, during which period the active litigation had largely ceased, the Court had set a trial date, but which was continued several times because of pending and eventually successful settlement negotiations.  The Application for fees and expenses shows that most of the time during this period was spent in working with the Receiver and the Receiver Ad Litem, and investor groups, in facilitating the settlement.

As explained at the hearing, this Court has previously approved significant fees and expenses for the Receiver and Receiver Ad Litem, and their counsel, with some comfort because these individuals, all of whom are located in this district, have made frequent appearances in Court and filed voluminous pleadings.  Both the Receiver, C. Clark Hodgson, Jr. and the Receiver Ad Litem, Stephen J. Harmelin, and their respective counsel, have performed ably and admirably in the best traditions of the Philadelphia Bar, and have been compensated appropriately for their efforts.

As to the fee applications by the Joint Liquidators and counsel, most of the applicants are based outside the United States, have not appeared in this Court, and their work has largely been performed in consultation with the Receiver and Receiver Ad Litem and the investor groups. Accordingly, under Third Circuit law additional inquiry was necessary.

The Court requested and received input from counsel for the Receiver and Receiver Ad Litem concerning the value of the work of the Joint Liquidators and their various counsel in concluding the settlements with Defendants.  The two largest settlements were with Defendant Man Financial, Inc., whose name was subsequently changed to MF Global, which contributed $75,000,000 to the settlement, and UBS (Cayman), which contributed $19,000,000 to the settlement.  Both Messrs. Hodgson and Harmelin generically advised the Court that the work of

the Joint Liquidators and their counsel had been helpful, not in the negotiation of the settlement itself, but rather in the preparation of final documents and assuring that the accords were in compliance in Cayman Islands and British law, and securing appropriate approval from the Cayman Islands Grand Court.

Inasmuch as the underlying litigation has been settled through the efforts of the Philadelphia-based Receiver Ad Litem and his counsel, the Court felt obliged to determine whether the fee applications of the Joint Liquidators and counsel reflected substantive contributions to the settlement.[1]

In the Court's Order of June 26, 2008 (Doc. No. 594), the Court approved, in part, fees requested, on account, pending the hearing that was held on July 18, 2008.  At the hearing, the Court heard presentations by and/or on behalf of the applicants and will rule on their applications as follows:

1.      Kroll (Joint Liquidators) seeks payment in the amount of $185,529 from October 2000 through December 2000.  Kroll was paid $150,000 on account.  At the hearing, Kroll was represented by Mr. David Fogerty, who provided details concerning the involvement of his firm and himself.  In view of the fact that the Joint Liquidators have been appointed by the Grand Court and had responsibilities to carry out their assignment by that Court, and that the work was performed in an efficient manner using employees of appropriate and varying seniority for the

---

[1]Prior to the hearing, as requested by the Court, the Joint Liquidators filed a Fourth Fee Application, and at the hearing on July 18, 2008, counsel for the Receiver indicated that there would likely be some opposition to portions of this Application.  Therefore, the Court will not pass on the Fourth Application at this time with one exception.  The exception applies to the time of two London barristers Mr. Crystal and Mr. Allison of South Square for their fees for certain time, the U.S. dollar value of which is $22,900 which the Court will award as part of the Third Application.

different tasks, the Court concludes that their fees are approved in full.  The Court notes that their

hourly rates are high for non-attorneys, but accepts the representations, of which there are

several, that the rates charged are customary in the Cayman Islands, which reputably has a

sophisticated legal system and economy, given the location of so many offshore entities there to

avoid U.S. (and other countries) taxes and regulations.[2]

     2.    Nixon Peabody is a U.S. firm that has been representing the Joint Liquidators in

this Court throughout this litigation.  Their senior litigator, Robert Sentner, appeared in this

Court and presented the facts supporting his firm's application for $79,957, of which the Court

had previously allowed $50,000 on account.  Mr. Sentner documented that his presence had been

required at different settlement conferences, either by Magistrate Judge Strawbridge or by

counsel for Receiver Ad Litem.  The Court is satisfied that his presence, in terms of representing

the interests of the Joint Liquidators and facilitating the settlement, which was in the interest of

the investors, warranted at certain points the presence of an U.S. based lawyer and that his fees

should be awarded in full.

     3.    Walkers is a Cayman Islands based law firm that had been retained by the Joint

Liquidators at the outset of this case.  Walkers had originally performed substantive work in the

Cayman Islands, but had subsequently retained London counsel, asserting that it was customary

---

[2]No Offshore Fund's assets were located in the Cayman Islands.  Its dissolution could have been performed under this Court's supervision.  The Court does not assert that legitimate offshore entities should be necessarily regulated by the U.S. or be subject to the jurisdiction of U.S. courts.  An international economy requires that other sovereign countries attract banks, mutual funds, etc. and have court systems to adjudicate disputes.  However, in the situation of a complete fraud, as existed in this case, Congress should consider wider jurisdiction for U.S. courts.  The CFTC and the SEC should consider proposing legislation allowing U.S. courts to ignore offshore companies and laws that have no substantive relevance, when a fraud has been conducted within the U.S.

to retain London based counsel for complicated transactions because the Cayman Islands courts followed British law.  In such matters, Walkers, in its representations of Cayman Islands clients, was more comfortable giving their clients opinions if they were supported by British lawyers.

However, as the Court noted at the hearing, and in questioning to Mark Holligon, who was appearing at the hearing on behalf of Walkers, the time entries for Walkers during the period in question (October 2007 through December 2007) were, with very few exceptions, for six-minute entries, several times per day on many days throughout this period.  As the Court noted at the hearing, and Mr. Holligon did not dispute, little, if any, substantive work can be accomplished by multiple six-minute entries and that the notes supporting the entries, and the narrative that Mr. Holligon prepared, show that the work performed was routine and administrative.  The Court concludes that the Walkers work in this period was not of substantive value in arriving at the settlements in this case.

One point about Walkers which the Court noted, is that although they claim they are one of two preeminent firms in the Cayman Islands with international offices and a sophisticated practice, Walkers nonetheless felt the need to retain British counsel to represent its client.  This is another reason to disallow additional fees to Walkers.

In the Court's Order of June 26, 2008 Walkers was awarded $10,000 on account of its final petition of $35,472.  Under all of the facts and circumstances, the Court finds that $10,000 is adequate compensation for its services during this fourth quarter.  It is important to note that Walkers has been ably and fully compensated for its time prior to the fourth quarter 2007, but it is clear from the overall record that during this period, it ceded its responsibility, as counsel to Kroll, to London counsel.

4.      After it was determined that UBS would become a party Defendant in this case, Walkers advised Kroll that it had a conflict as to UBS and accordingly, Kroll retained Ritch & Connolly, another Cayman Islands firm, to represent Kroll.  Although a representative from Ritch & Connolly did not appear at the hearing, the Court has reviewed their fee submission and finds that their total fee application is $25,546 is warranted and reasonable.  In its June 26, 2008 Order, the Court awarded $15,000 on account and the balance of their fees is awarded in full.

5.      South Square, an association of three British barristers, filed an application for $125,424.  Mr. James Allison, a barrister from London, appeared at the hearing and represented to the Court in some detail the work he had performed in facilitating the settlement and making sure it complied with Cayman Islands law.  The Court is satisfied with Mr. Allison's description and the affidavit prepared by his colleague, Mr. Crystal, that the full fees of South Square should be awarded.

At Mr. Allison's request, the Court will also authorize the Receiver to compensate him upon presentation of an appropriate invoice and documents for the lowest available round-trip coach fare between Philadelphia and London for his appearance at the hearing on July 18, 2008.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 05-2973 |
| PAUL M. EUSTACE, et al. | : | |

**ORDER**

AND NOW, this 8th day of August, 2008, for the reasons set forth in the foregoing Memorandum, it is hereby ORDERED that the Receiver, C. Clark Hodgson, Jr. is authorized to pay the following amounts from the Receivership estate and make allocations among the different funds as he deems appropriate:

| | | |
|---|---|---|
| 1. | Kroll (Joint Liquidators) | $35,529.00 |
| 2. | Nixon Peabody | $29,957.00 |
| 3. | Ritch & Connolly | $10,546.00 |
| 4. | South Square (3rd Application) | $25,424.00 |
| 5. | South Square (4th Application) | $22,900.00 |

BY THE COURT:

s/Michael M. Baylson

_____

Michael M. Baylson, U.S.D.J.

O:\CIVIL\05-2973 Commodity Futures v. Eustace\Commodity Future - Memo Joint Liquidators.wpd